UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 25-CR-167 (PJS/JFD) |
| Plaintiff, | |
| v. | **ORDER AND**<br>**REPORT & RECOMMENDATION** |
| RODOLFO REBOLLAR-GONZALEZ, | |
| Defendant. | |

This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. This matter is before the Court on three motions by Rodolfo Rebollar-Gonzalez: a Motion to Suppress Evidence (Dkt. No. 21); a Motion for Disclosure of Informants (Dkt. No. 22); and a Motion to Dismiss Count Three. (Dkt. No. 23.) Mr. Rebollar[1] has been charged by superseding indictment (Dkt. No. 19) with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); re-entering the United States after having been removed in violation of 8 U.S.C. § 1326(a); being a prohibited person in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(8); and distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

The Court held a motions hearing on August 21, 2025. Assistant United States Attorney Timothy Campbell Warner represented the United States, and Attorney Daniel P.

---

[1] Mr. Rebollar's motions refer to him as Mr. Rebollar, and the Court will do the same.

1

Huddleston represented Mr. Rebollar. Counsel for the United States submitted the search warrant at issue here and accompanying application (including the affidavit in support of that application) for an apartment on Old Hudson Road in St. Paul, Minnesota, alleged to be possessed by Mr. Rebollar (U.S. Ex. 1) and Body-Worn Camera ("BWC") footage from the execution of that warrant (U.S. Ex. 2). Neither party called any witnesses to testify. The parties agreed to submit Mr. Rebollar's motions to the Court on the briefing as of the date of the hearing. The Court took the motions under advisement on August 21, 2025.

## BACKGROUND

A grand jury in the State and District of Minnesota indicted Mr. Rebollar on the above charges on June 24, 2025. The United States alleges that Mr. Rebollar and a co-conspirator, Mr. Alcala-Hernandez,[2] were using an apartment on Old Hudson Road in St. Paul and another in St. Louis Park as rendezvous points and storage locations in a drug trafficking operation. This allegation is supported by police physical surveillance and an interaction where an informant planned a meeting with a person the informant identified as the leader of a trafficking organization. (U.S. Ex. 1 at 2–3.) In that meeting, the informant (hereinafter the "Minnesota Informant") talked to three men in a Subaru that was registered to Mr. Rebollar. The Minnesota Informant identified two of the men as Mr. Rebollar, who was driving the car, and Mr. Alcala-Hernandez, who was a passenger. (*Id*.) During that meeting, Mr. Alcala-Hernandez offered to sell the informant methamphetamine and cocaine in significant quantities, after he received what the warrant claimed would be a

---

[2] Defense counsel refers to him as Mr. Hernandez and counsel for the United States refers to him as Mr. Alcala.

2

"shipment of methamphetamine in a 'trailer' within the next few days." (*Id*. at 2.) After the meeting, two cars left the scene: the Subaru, registered to Mr. Rebollar, and a Mercedes registered to Mr. Alcala-Hernandez. Mr. Alcala Hernandez also gave the Minnesota Informant several phone numbers to use to contact him. (*Id*.)

After the meeting, Special Agent Anthony Joseph Fletcher of the Minnesota Bureau of Criminal Apprehension showed driver's license photos for Mr. Alcala-Hernandez and Mr. Rebollar to the Minnesota Informant, who identified them as two of the men in the Subaru he met to discuss the methamphetamine transaction. (*Id*. at 3.) SA Fletcher also ran the phone numbers that the informant received from Mr. Alcala-Hernandez through law enforcement databases and learned that one of those numbers had recently been identified by the Drug Enforcement Agency ("DEA") as being associated with a "drug trafficker named 'Rodo' … in Minnesota," who had been identified as such in two separate investigations. (*Id*.) The DEA's association of the telephone number with a drug trafficker nicknamed "Rodo" had come about through another informant working in an investigation in St. Louis, Missouri (hereinafter, the "St. Louis Informant"). The St. Louis Informant is purportedly associated with the Jalisco New Generation Cartel ("CJNG"—apparently its acronym in Spanish) and reported to the DEA that 'Rodo' was also affiliated with the CJNG. (*Id*.) SA Fletcher stated that the information provided by the St. Louis Informant further corroborated that supplied by the Minnesota Informant.

In the warrant affidavit, SA Fletcher recounted the history of collaboration between Minnesota law enforcement entities and the Minnesota Informant in this case. He said that the informant "has provided information to [SA Fletcher] and other officers about persons

3

selling narcotics within the Twin Cities area" and that SA Fletcher "and other investigators have corroborated this information and found it to be true and correct." (*Id*. at 2.) SA Fletcher stated that information from the informant has resulted in "the controlled purchase of narcotics," "the seizure of narcotics, weapons, US currency, and numerous arrests," as well as "the prosecution of both State and Federal cases." (*Id*.)

For the following reasons, the Court recommends that the two dispositive motions be denied and orders that the Motion for Disclosure of Informants be granted in part and denied in part. The Court addresses each motion in turn.

I. **Mr. Rebollar's Motion to Suppress**

Much of the evidence supporting the charges was seized under the authority of a search warrant authorized by a Minnesota state court judge. The warrant was executed on November 21, 2023. (U.S. Ex. 1 at 8–9.) In executing the warrant at 1880 Old Hudson Road in St. Paul, Minnesota, police seized multiple pounds of both methamphetamine and marijuana, multiple cell phones, two magazines loaded with ammunition, and over $1,000 in U.S. currency from an apartment. (*Id*. at 9.) As the BWC footage submitted by the United States shows, the nine pounds of seized methamphetamine were in Mr. Rebollar's arms when police entered the apartment. (U.S. Ex. 2.) Mr. Rebollar moves the Court for an order suppressing this evidence, claiming the search warrant application lacked probable cause and that the good faith exception to the Fourth Amendment's exclusionary rule does not apply. The Court disagrees and recommends that Mr. Rebollar's Motion be denied.

A. **Warrant Supported by Probable Cause**

The Fourth Amendment provides that:

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. The Fourth Amendment proscribes only "unreasonable" searches and seizures. A search conducted under the authority of a judicially issued warrant is presumed to be reasonable. *Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant."); *United States v. Leon*, 468 U.S. 897, 914 (1984) ("Because a search warrant provides the detached scrutiny of a neutral magistrate, … we have expressed a strong preference for warrants…. The preference for warrants is most appropriately effectuated by according "great deference" to a magistrate's determination.") (cleaned up). A search pursuant to a judicially issued warrant "will rarely require any deep inquiry into reasonableness" because "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. 922 (citing *United States v. Ross* 456 U.S. 798, 823, n. 32 (1982)).

Generally, the preference for warrants and the great deference to be accorded to an issuing judge's determination means that a criminal defendant bears the burden of proving that a warrant is so lacking in support that its evidentiary fruits must be suppressed. *See United States v. Ozar*, 50 F.3d 1440, 1443 (8th Cir. 1995) (citing *United States v. Garcia*, 785 F.2d 214, 222 (8th Cir. 1986). "Under traditional search and seizure law, the burden

5

is, of course, on the accused in the first instance to prove to the trial court's satisfaction that [the search technique] was unlawfully employed." *United States v. Phillips*, 540 F.2d 319, 326 (8th Cir. 1976). Whether probable cause exists to issue a search warrant is determined by considering the totality of the circumstances. *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017). An officer's training and experience is to be included in a consideration of the totality of the circumstances. *United States v. Noriega*, 35 F.4th 643, 650 (8th Cir. 2022) *See also United States v. Williams*, 976 F.3d 807, 810 (8th Cir. 2020) (relying on officer's training and experience in finding good faith reliance on warrant).

Mr. Rebollar's chief argument for the suppression of the evidence seized by police in executing the search warrant is that the affidavit provided in support of the warrant application did not supply probable cause for the search because "there was not a sufficient nexus between the alleged drug trafficking and the Old Hudson Road apartment." (Def.'s Mot. to Suppress 3–4, Dkt. No. 21.) While Mr. Rebollar concedes that the affidavit may have shown probable cause to support a search of Mr. Alcala-Hernandez and the St. Louis Park apartment leased to him, he argues that it did not provide probable cause to search the St. Paul apartment. The United States argues that the information in the affidavit provides a substantial nexus between Messrs. Alcala-Hernandez and Rebollar and the two apartments. The Court agrees with the United States.

Mr. Rebollar may freely associate with anyone he pleases, and he is correct that "mere association with a known or suspected criminal does not establish probable cause." *United States v. Ralston*, 88 F.4th 776, 781 (8th Cir. 2023). However, neither the issuing court when issuing the warrant, nor this Court when reviewing that issuance, is barred from

6

considering Mr. Rebollar's associations as part of the totality of the circumstances that contribute to a probable cause determination. When it considers the totality of the circumstances, including Mr. Rebollar's associations, the Court concludes that Mr. Rebollar has not met his burden of showing that the search warrant was not supported by probable cause.

Mr. Rebollar argues that the warrant application did not adequately connect either himself or the Old Hudson Road apartment to the drug trafficking activities at issue. While the warrant authorized only a search of the apartment and not a search of Mr. Rebollar himself (U.S. Ex. 1 at 6–8), one recognized method of demonstrating a nexus between criminal activity and a residence sought to be searched is to show that the inhabitant is engaged in criminal activity. *United States v. Carpenter*, 341 F. 3d 666, 671 (8th Cir. 2003) (finding "[a]s a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence," even where the affidavit contained no nexus between a residence and suspected contraband).

Mr. Rebollar-Gonzalez's attempts to dissociate himself from criminal activity is unavailing, and therefore his own actions contribute to a finding that probable cause existed to search the Old Hudson Road apartment. Even if the search warrant application needed to show probable cause to suspect that Mr. Rebollar himself had committed a crime, it does so. The Minnesota informant told police he was going to meet with the head of a drug trafficking organization, and police observed that meeting. The vehicle that arrived at the meeting location, the gray Subaru, was registered to Mr. Rebollar. During the meeting, Mr.

7

Alcala-Hernandez agreed to sell the informant methamphetamine, and one of the phone numbers Mr. Alcala Hernandez gave the informant to use in effectuating that transaction was identified as belonging to a drug trafficker in Minnesota named 'Rodo,' a nickname that consists of the first four letters of Mr. Rebollar's first name, "Rodolfo." After the meeting, the informant identified Mr. Rebollar as being in the car.[3] The warrant application thoroughly describes the probable cause supporting a search of the Old Hudson Road apartment, in part by connecting Mr. Rebollar himself to criminal activity. In the affidavit, SA Fletcher said that he believed that the Old Hudson Road apartment was used by both Mr. Rebollar and Mr. Hernandez in furtherance of their "large scale drug trafficking operation." In support of that belief, SA Fletcher relied on rental records showing that Mr. Rebollar was "listed as a current renter at" the apartment; multiple police officers' observations of Mr. Rebollar and Mr. Alcala-Hernandez parking at and keying into the apartment building, both in person and on video surveillance; and information provided by informants, which was adequately shown to be reliable.[4] (U.S. Ex. 1 at 3.)

Mr. Rebollar rightly concedes that the affidavit provided probable cause to believe that Mr. Alcala-Hernandez was connected to drug trafficking. (*see* Def's Mot. to Suppress

---

[3] Mr. Rebollar was arrested during the search because he had large quantities of narcotics in his arms as police entered the apartment, giving the executing officers probable cause to arrest him. (See U.S. Ex. 2.)

[4] The application provided rationale for the determination that both informants could be considered reliable, including by providing reliable information in the past, previous involvement in controlled narcotics purchasing operations, and police corroboration. (*See* U.S. Ex. 1 at 2–3.)

4, Dkt. No. 21.) That concession, coupled with the statements that Mr. Alcala-Hernandez had a key to the Old Hudson Road apartment, used it to let himself into the apartment, and was seen at the apartment on multiple occasions, (U.S. Ex. 1 at 3), provide information adequate for the issuing judge to have concluded that there was a fair probability that evidence of a crime would be found in the apartment, tied either to Mr. Rebollar or Mr. Alcala-Hernandez. *See United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir. 1995). Mr. Rebollar has not made a showing sufficient to overcome the presumption of validity this Court must give to the properly issued warrant. Accordingly, the Court recommends that his Motion to Suppress be denied.

### B. Search Warrant Executed in Good Faith

Even if a Court finds that an issued warrant was not supported by probable cause, evidence found in a search conducted pursuant to that warrant need not be suppressed if the warrant was executed in good faith. In *Leon v. United States*, the Supreme Court held that the exclusionary rule does not apply when the police obtain evidence by acting in "objectively reasonable reliance" on a search warrant. 468 U.S. 897, 922 (1984); *see also Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting *Leon*, 468 U.S. at 922). The *Leon* good faith exception will not apply for the following four reasons:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017) (citing *United States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007)). A court may find that the good faith exception applies even where, as is the case here, the police personnel who executed the warrant are the same individuals who applied for the warrant. *United States v. Mayweather*, 993 F.3d 1035, 1043 n.8 (8th Cir. 2021) ("[W]e do not vary our analysis when the officer who applies for a search warrant also executes the warrant.") (citing *United States v. Carpenter*, 341 F.3d 666, 669–670 (8th Cir. 2003); *United States v. Falso*, 544 F.3d 110, 113–14 (2d Cir. 2008)).

Mr. Rebollar argues that the third reason for non-applicability of the good faith exception should apply here, saying that "the affidavit was so lacking in indicia of probable cause related to the Old Hudson Road apartment, that good faith should not apply" because "the affidavit simply did not say very much about" it. (Def.'s Mot. to Suppress 6, Dkt. No 21.) This two-sentence argument is conclusory, merely reciting the standard and claiming it is met. For the reasons discussed above in finding that the affidavit was supported by probable cause, the Court rejects the argument that the affidavit was lacking in probable cause at all, let alone that probable cause was so lacking that it was entirely unreasonable for officers to rely upon it.

## II.   Mr. Rebollar's Motion to Disclose Informants

Mr. Rebollar moves for an order compelling the United States to disclose the identity of informants. (Dkt. No. 22.) The United States has a limited privilege to withhold the identity of its confidential informants. *McCray v. Illinois*, 386 U.S. 300, 311 (1967). The defendant bears the burden of demonstrating the need for disclosure. *United States v.*

10

*Harrington*, 951 F.2d 876, 877 (8th Cir. 1991). "[I]n order to override the government's privilege of nondisclosure, defendants must establish beyond mere speculation that the informant's testimony will be material to the determination of the case." *Id.* Put differently, "[t]here must be some showing that the disclosure is vital to a fair trial." *United States v. Curtis*, 965 F.2d 610, 614 (8th Cir. 1992). When deciding whether the confidential informant's identity must be disclosed, courts must balance the defendant's needs against the public's strong interest in preserving the confidences of individuals who report crimes. *Roviaro v. United States*, 353 U.S. 53, 59–62 (1956). Courts consider factors such as the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001) (citing *Roviaro*, 353 U.S. at 60–61); *see also United States v. Lapsley*, 263 F.3d 839, 841 (8th Cir. 2001) ("Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."). "Where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." *Devose v. Norris*, 53 F.3d 201, 206 (8th Cir. 1995); *accord United States v. Foster*, 815 F.2d 1200, 1203 (8th Cir. 1987) ("The disclosure of an informant who was an active participant in the crime the accused is charged with is generally required."). By contrast, in cases involving "a 'tipster,' i.e., a person who merely conveys information but does not witness or participate in the offense," disclosure is not vital to a fair trial and so is usually not required. *United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir. 1987).

11

There are two informants in this case: the first related to Count 1, and the second related to Counts 4 and 5. The United States does not assert the informant privilege over the second informant and says that it will disclose the identity of the second informant when trial witnesses are due. (U.S. Resp. 5, Dkt. No. 27.)

The parties dispute whether the United States is entitled to assert the informant privilege over the first informant, whose information supports the grand jury's allegations in Count 1, Possession of Methamphetamine with the Intent to Distribute. That informant participated in the meeting with Mr. Rebollar and Mr. Alcala-Hernandez, during which Mr. Alcala-Hernandez offered to sell the informant a large quantity of methamphetamine. (U.S. Ex. 1 at 2.) The car in which the two men arrived, a gray Subaru, was registered to Mr. Rebollar, and the informant identified one of the men as Mr. Rebollar. (*Id*. at 2–3.) The informant also provided police with a phone number, given to him by Mr. Alcala-Hernandez as a number at which he could be reached, which was flagged as belonging to a drug trafficker in Minnesota named "Rodo." The Court is not aware of any further involvement of this informant in the investigation into Mr. Rebollar's activities.

Count 1 is a possession charge based on firsthand police observation, supported by police BWC footage, of Mr. Rebollar in possession of a multi-pound quantity of methamphetamine when the warrant was executed. The United States does not allege that Mr. Rebollar was in possession of controlled substances when Mr. Rebollar and Mr. Alcala-Hernandez met with the informant. As the Court notes above, the warrant to search Mr. Rebollar's apartment was supported by probable cause. Further, Mr. Rebollar was not arrested under the authority of the warrant. He was arrested because when the police

executed the warrant, they found Mr. Rebollar inside the apartment holding pounds and pounds of methamphetamine. (U.S. Ex. 2.) That the meeting itself would not have occurred but for the informant is immaterial to the question of disclosure because there is nothing unique to this specific informant that makes his identity material to Mr. Rebollar's defense or vital to a fair trial.

Mr. Rebollar's Motion is non-dispositive, and the Court resolves it via order.[5] Accordingly, the motion is denied as to the first informant because Mr. Rebollar has not provided a basis to conclude that the disclosure of the informant's identity would be material to his defense. The Motion is granted as to the second informant, who, as the United States concedes, "was an active witness to and participant in the exchanges." (U.S. Resp. 5, Dkt. No. 27.)

### III.  Mr. Rebollar's Motion to Dismiss Count Three

Mr. Rebollar claims that the statutes charged in Count Three, 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(8), violate the Second Amendment of the United States Constitution.[6] (Def's Mot. to Dismiss, Dkt. No. 23.) The Court recommends denying Mr. Rebollar's Motion to Dismiss because 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(8) are not facially unconstitutional nor unconstitutional as applied to Mr. Rebollar. These statutes and

---

[5] Because this motion to resolved via order, any challenge to this determination must be made as an appeal to the District Judge assigned to this case, in accordance with D. Minn. 72.2(a).

[6] Mr. Rebollar acknowledges that this argument is foreclosed by *United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023) and files this motion in an effort to preserve the issue for appeal. (Def's Mot. to Dismiss 1, Dkt. No. 23.)

13

those like them have been consistently held to be constitutional because they either do not govern conduct traditionally protected by the Second Amendment or are consistent with this nation's history of firearm regulation, and nothing in this case provides justification for disturbing that well-established trend. *See United States v. Sitladeen*, 64 F.4th 978, 987 (8th Cir. 2023); *United States v. Jackson*, 85 F.4th 468 (8th Cir. 2023); *United States v. Jackson*, 110 F.4th 1120, 1126 (8th Cir. 2024); *see generally New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022); *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court held that, to regulate firearm possession without infringing upon a person's rights under the Second Amendment, the United States "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. So long as firearm regulations share the principles underpinning historical regulations, they should be deemed constitutional. *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

The Eighth Circuit has not determined whether 18 U.S.C. § 922(g)(5)(A) is consistent with the United States' historical and traditional regulation of firearms, but it has held that such inquiry is unnecessary because the term "the people" in the text of the Second Amendment does not include individuals present in the United States unlawfully, and resultingly, 18 U.S.C. § 922(g)(5)(A) does not "govern[] conduct that falls within the plain text of the Second Amendment." *United States v. Sitladeen*, 64 F.4th 978, 985 (8th Cir. 2023) (citing *United States v. Flores*, 663 F.3d 1023 (8th Cir. 2011)). This same

14

analysis is applicable to 18 U.S.C. § 924(a)(8), which lists the potential penalties for violation of 18 U.S.C. § 922(g). *See Flores* 663 F.3d at 1023. As the *Sitladeen* court held, "*Bruen* decided nothing about *who* may lawfully possess a firearm. Therefore, we remain bound by *Flores*." *Sitladeen*, 64 F.4th at 985 (citing *Bruen*, 597 U.S. at 2157 (Alito, J., concurring)). District courts are bound to apply the precedent of the circuit in which they sit. *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2023).

Mr. Rebollar, in his motion to dismiss, recognizes that the determination in *Sitladeen*, affirming § 922(g)(5)'s constitutionality, precludes his argument. (Dkt. No. 23 at 1.) Because the law under which Mr. Rebollar is charged—§ 922(g)(5)—has been held to be constitutional by the Eighth Circuit, the Court finds that Mr. Rebollar does not enjoy the constitutional protections provided by the Second Amendment and accordingly recommends that his Motion to Dismiss Count Three of the Indictment be denied.

## ORDER

Therefore, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Mr. Rebollar's Motion for Disclosure of Informants (Dkt. No. 22) is **GRANTED IN PART AND DENIED IN PART**.

## RECOMMENDATION

Further, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Mr. Rebollar's Motion to Suppress Evidence (Dkt. No. 21) be **DENIED**; and

2. Mr. Rebollar's Motion to Dismiss Count Three of the Indictment (Dkt. No. 23)

be **DENIED**.

Date: September 16, 2025                    *s/ John F. Docherty*
                                            JOHN F. DOCHERTY
                                            United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).